IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN<br><br>    Plaintiff,<br>v.<br><br>HAMILTON FOX, *et al.*,<br><br>    Defendants. | Civil Action No.: 1:18-cv-01579 |

**PLAINTIFF'S REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING MOTION TO DISMISS AND FOR RECUSAL OR DISQUALIFICATION**

Mr. Klayman hereby submits the following in reply to Defendants' Opposition to Motion for Reconsideration and Recusal or Disqualification.

Defendants' opposition raises nothing that warrants denial of Mr. Klayman's motion. Indeed, all it does is raise the question of why Defendants, who are to also respect and represent those that they attempt to prosecute, are so staunchly opposing Mr. Klayman's constitutional and due process rights to have his day in court and prosecute his claims. This wreaks of the same selective political and gender-based prosecution that formed the basis for Mr. Klayman's claims in the first place.

Indeed, it has only recently come to Mr. Klayman's attention that this is not the first time that the Office of Bar Disciplinary Counsel ("ODC"), and specifically Julia Porter ("Ms. Porter"), who is Deputy Bar Counsel and thus a supervisor, has engaged in this type of misconduct. Ms. Porter previously prosecuted JP Symkowicz ("Mr. Symkowicz") over the course of 13 years, 6 months, and 30 days regarding Mr. Symkowicz's firm's representation of an elderly woman. Through false statements and other misconduct, Mr. Symkowicz was kept in

1

the disciplinary proceedings despite the fact that he never even spoke to the client, whose representation was undertaken by his father. Specifically Ms. Porter on behalf of ODC made numerous false statements to the Board of Professional Responsibility and the District of Columbia Court of Appeals in a knowingly fraudulent attempt to try to implicate Mr. Symkowicz in with his father (who was also finally found innocent), despite there being absolutely no basis to do so. After Ms. Porter failed to get the result she wanted and Mr. Symkowicz was found not to have acted unethically, she apparently had her former ODC colleague Michael Frish, incredibly now a law professor at Georgetown Law School, tarnish and smear Mr. Symkowicz 's reputation by publishing defamatory articles. Not coincidentally, Mr. Symkowicz is the now the only Republican city council member in Washington D.C. The full "whistleblower report" is attached hereto as <u>Exhibit 1</u>.

This type of misconduct by Office of Bar Disciplinary Counsel (ODC) is what this Court is protecting. Tellingly, this Court dismissed Mr. Klayman's claims without prejudice, which can only be explained by the fact that it knew that the order was not justified, yet still felt compelled to shield ODC from even having to participate in discovery, in order to prevent the facts from coming out even more specifically. The Court cannot have it both ways by trying to give Plaintiff Klayman the impression of impartiality – which impartiality Mr. Klayman questioned from the outset but was reassured otherwise by the presiding judge otherwise - while protecting the ODC and the other Defendants from even having to participate in discovery.

Put simply, Defendants are not above the law and cannot and should not be shielded from even discovery, creating the appearance of a politically based and biased cover-up, for the compelling reasons set forth in Plaintiff Klayman's Motion for Reconsideration and Recusal.

I.       MOTION FOR RECONSIDERATION

Mr. Klayman seeks reconsideration pursuant to Fed. R. Civ. P. 60(b), which states, in relevant part, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . (6) any other reason that justifies relief." As set forth in Mr. Klayman's motion, the Court has made crucial, egregious legal errors that mandate reconsideration.

However, Defendants erroneously assert that Rule 60(b)(1)'s mistake provision only applies change of controlling law during the time between the entry of judgment and the filing the Rule 60 motion. Defendants only cite a non-controlling District Court's interpretation of the rule. *See Bestor v. FBI*, 539 F. Supp. 2d 324, 328 (D.D.C. 2008). However, this is not the universal standard that Courts have applied. For instance, the U.S. Court of Appeals for the Fifth Circuit expressly allows for motions to be made under Rule 60(b)(1) for judicial errors. *See Lairsey v. Advance Abrasives Co.*, 542 F.2d 928 (5th Cir. 1976) (allowing motions to be made under Rule 60(b)(1) for a "fundamental misconception of law" by trial courts.) *See also Fackelman v. Bell*, 564 F.2d 734 (5th Cir. 1977) ("The law of this circuit permits a trial judge, in his discretion, to reopen a judgment on the basis of an error of law.")

In any event, nothing set forth by Defendants in their opposition changes the fact that Mr. Klayman's motion is also brought under Rule 60(b)(6), which allows for reconsideration on "any other reason that justifies relief." Here, the egregious errors clearly constitute "extraordinary circumstances" to justify the invocation of this provision. Indeed, the Court's clearly erroneous finding that Mr. Klayman failed to plead bad faith regarding the *Younger* doctrine, in conjunction

with the Court itself incredibly running through multiple specific allegations of bad faith pled[1] in the Amended Complaint constitutes the type of extraordinary error that "justifies relief."

Beyond the Court's recounting of the specific allegations as to bad faith, which in and of itself should have been adequate at the pleading stage for this matter to proceed to discovery, Mr. Klayman also alleges that Defendants unilaterally resurrected Mr. Sataki's Complaint after it had been abandoned by employing investigators to literally hunt down Ms. Sataki in order to get her to continue her complaint against Mr. Klayman. Am. Comp. ¶ 36. Furthermore, the Amended Complaint sets forth that Defendant Herman brazenly and openly admitted her bias and animus against Mr. Klayman due to his political beliefs, activism, free speech, and gender when she curtly and in a hostile manner, on more than one occasion, stated to Mr. Klayman, "I [we] don't

---

[1] The Court details numerous instances of bad faith pled in the Amended Complaint before finding that the Amended Complaint did not plead bad faith:

> *First*, that Plaintiff has "brought lawsuits against Hillary Clinton, Barack Obama, George W. Bush, and other politicians and government officials;" "conceived and founded . . . Judicial Watch, Inc. and Freedom Watch, Inc.;" and "r[an] for the U.S. Senate in the Florida Primary." Dkt. 10 at 9 (Am. Compl. ¶ 41). *Second*, that two of the four individual defendants "donated defendants "donated significant sums of monies to Hillary Clinton and Barack Obama as well as other liberal Democrats." *Id.* (Am. Compl. ¶ 42). *Third*, that one of the members of "the hearing committee that is adjudicating the Sataki Complaint" signed a complaint "seeking to discipline" Kellyanne Conway "for her political beliefs" and "to . . . chill[] . . . free speech on behalf of President Donald J. Trump." *Id.* 19–20 (Am. Compl. ¶¶ 89-92). *Fourth*, that one of the individual defendants allegedly has a conflict of interest, unrelated to any political activity, *id.* at 15 (Am. Compl. ¶ 68), and acted in a hostile manner towards Plaintiff at a meeting, *id.* at 15–16 (Am. Compl. ¶¶ 69–75); another individual defendant acted in a "hostile" manner and with a "disrespectful demeanor" towards Plaintiff, *id.* at 12 (Am. Compl. ¶¶ 52–56); and yet another individual defendant suggested that Plaintiff resign from the bar to avoid "embarrassment and bad publicity," *id.* at 13–14 (Am. Compl. ¶¶ 60–61). *Finally*, that, in Plaintiff's view, the Sataki Complaint is "clearly non-meritorious," as evidenced by the fact that the Florida and Pennsylvania Bars summarily rejected the same charges. *Id.* at 17 (Am. Compl. ¶ 80). ECF No. 33 at 19-20.

4

like the way you practice law." Am. Comp. ¶ 54. When Mr. Klayman advised her at the same meeting that The Florida Bar and the Pennsylvania Bar had summarily dismissed Ms. Sataki's claims at the time seven years ago, she on behalf of Defendants stated that "we couldn't care less." Am. Comp. ¶ 56. The same bad-faith was exhibited by Defendant Fox during a May 11, 2018 meeting:

> From the outset, Defendant Fox immediately and belligerently stated that he was not going to hear anything about or discuss dismissal of the Specification of Charges, but that Mr. Klayman could simply produce the evidence of misconduct and unethical and illegal behavior.
> Mr. Klayman calmly responded that he would not be dictated to as to what he could discuss. This prompted Defendant Fox to stand up threateningly, lurch towards Mr. Klayman, and scream "this meeting is over." He demanded that Mr. Klayman "leave [his] office."
> When Mr. Klayman calmly got up from his chair, he indicated that this gross prosecutorial misconduct would leave him no recourse but to file this instant Complaint and now Amended Complaint, as well as bar grievances which are attached hereto as Exhibit 1 and are incorporated herein by reference.
> Defendant Fox then approached Mr. Klayman at the door, as if to stalk him and screamed, "I welcome your complaint," adding in a hostile voice showing great animus, "do you seriously believe that I would not welcome the opportunity through discovery to show how you practice law?" Am. Comp. ¶¶ 71-74.

And, lastly, "at the hearing in the Sataki matter, Defendants, acting in concert, by and through Defendant Smith, openly admitted that their motivation in prosecuting bar complaints against Mr. Klayman is because he had filed large and complex lawsuits against Hillary Clinton, other Democrats, and other related parties, persons, and entities."

Thus, the bottom line here is simple. Mr. Klayman should have been allowed to take discovery. It was impossible for Mr. Klayman to plead with any more specificity than what was pled in the Amended Complaint, which specificity this Court has expressly recognized in its order granting dismissal. Any further information could only have been gleaned through discovery in the form of ODC's internal documents and depositions. In erroneously finding lack of specificity while denying Mr. Klayman even the right to take discovery, the Court has, in

5

essence, told Mr. Klayman that it does not intend to allow Mr. Klayman to pursue any claims against Defendants. This is not the Court's role and is clearly an "extraordinary" error that mandates reconsideration.

## II. MOTION FOR DISQUALIFICATION

Mr. Klayman moved for disqualification pursuant to 28 U.S.C. § 455 and 28 U.S.C. § 144. Indeed, it is undeniable that an impartial judiciary is a fundamental component of the system of justice in the United States. The right to a "neutral and detached judge" in any proceeding is protected by the U.S. Constitution and is an integral part of maintaining the public's confidence in the judicial system. *Ward v. City of Monroeville*, 409 U.S. 57, 61-62 (1972).

Defendants falsely and erroneously assert that Mr. Klayman's motion to disqualify was not timely. There is no law to support this conclusion. Defendants apparently cherry-pick language stating that "…section 144 requires the affidavit to be filed "not less than ten days before the beginning of the term at which the proceeding is to be heard, [unless] good cause shall be shown…," *SEC v. Loving Spirit Found.*, 364 U.S. App. D.C. 116 (2004), while conveniently omitting the following sentence, which states, "the statute says nothing about what the timeliness requirement means where, as in this case, the recusal motion rests on events occurring after proceedings began. In such circumstances, some courts have required the affidavit to be filed "at the earliest moment." *Id*. Here, it is clear that the recusal motion is based upon this Court's order dismissing Mr. Klayman's claims, which occurred on June 5, 2019. Mr. Klayman's motion was filed a mere two days later, on June 7, 2019. There is clearly no delay[2].

---

[2] Furthermore, Mr. Klayman includes at the bottom a certification of good faith, and re-attaches his affidavit in support of recusal in order to ensure that this motion is decided on the merits.

Mr. Klayman's motion clearly set forth exactly how this Court has allowed its political partisanship to bias and influence its decision-making. The Court strained to find a way to prevent Mr. Klayman from taking discovery of ODC, despite there being no basis in law or fact to do so. The incredibly specific Amended Complaint details exactly how and why Defendants have abused and exceeded their authority to specifically target and try to remove Mr. Klayman from the practice of law. The Court even acknowledged the specific allegations of bad faith and unconstitutional illegality pled in the Amended Complaint, ECF No. 33 at 19-20, yet still found the Amended Complaint to be conclusory, with a heads Defendants win tail Mr. Klayman loses approach to jurisprudence. This wreaks of bias, prejudice, and protectionism, and as such this Court must recuse itself or be disqualified pursuant to 28 U.S.C. § 455 and 28 U.S.C. § 144 and vacate all of its orders so that this matter may proceed before a truly independent judicial officer.

## III.   CONCLUSION

Based on the foregoing, Plaintiff Mr. Klayman respectfully requests that this Court grant the motion for reconsideration and allow this matter to proceed to discovery. If it is not willing to do so, it must, at a minimum, recuse itself and vacate all of its orders, as it has exhibited deep-seated bias and prejudice that has made independent judgment impossible.

Dated: June 26, 2019                                                          Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
KLAYMAN LAW GROUP
2020 Pennsylvania Ave N.W. #800
Washington, D.C. 20006
Tel: (561) 558-5336
Email: leklayman@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on June 26, 2019.

                                                                         */s/ Larry Klayman*
                                                                         Attorney

## CERTIFICATE OF COUNSEL

I, Larry Klayman, Esq., am counsel for Plaintiffs in this matter. I hereby certify that this Motion and the accompanying affidavit and facts contained therein, made pursuant to 28 U.S.C. § 144, is being made in good faith.

                                                                         */s/ Larry Klayman*
                                                                         Attorney